**Donald C. NOWLIN, Plaintiff,**

v.

**K MART CORPORATION, Defendant.**

**No. CIV. A. 97–2468–GTV.**

United States District Court,
D. Kansas.

May 10, 1999.

Scott J. Bloch, Matthew D. All, Stevens & Brand, L.L.P., Lawrence, KS, for Donald D. Nowlin, plaintiff.

Douglas C. McKenna, Thomas M. Martin, Patrick G. Reavey, William H. Meyer, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for K Mart Corporation, defendant.

## MEMORANDUM AND ORDER

VANBEBBER, District Judge.

Plaintiff Donald C. Nowlin brings this action alleging that defendant K Mart Corporation constructively discharged him on the basis of his disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and in retaliation for exercising his rights under the ADA and the Kansas Workers Compensation Act (KWCA), K.S.A. 44–501 *et seq.* Plaintiff also asserts claims for fraudulent and abusive workers' compensation practices, and intentional infliction of emotional distress. The case is before the court on defendant's motion (Doc. 70) for summary judgment. For the reasons set forth below, the motion is granted.

### I. Summary Judgment Standards

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means

that the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific evidence that creates a genuine issue of material fact left for trial. *Id.*

## II. Factual Background

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

On November 18, 1991, plaintiff began employment at defendant's distribution center in Lawrence, Kansas. Plaintiff started as an order filler in the repack department on the first shift. An order filler pulls orders out of cartons and places them in another carton to go to the retail store. There are two types of order fillers—those who work in the high-volume area, and those who work with production requirements.

Throughout March, April, and May 1994, plaintiff suffered several injuries to his arms and hands. After plaintiff requested medical treatment for a job-related injury in May 1994, Martha Engnehl, defendant's human resources manager, forced plaintiff to wait three days to see Dr. Richard Wendt, the physician retained by defendant to treat such injuries. Engnehl required plaintiff to use personal leave time in the interim if he was unable to work.

Plaintiff testified in his deposition that following his injuries, defendant placed him in a repack department salvage position. The salvage position met plaintiff's temporary work restrictions, which prohibited use of his right arm, and limited use of his left arm. In the early summer of 1994, Frank Evans, the repack department manager, took plaintiff out of the salvage work and returned him to the order filler position. Plaintiff worked as an order filler for the next week, enduring severe pain. Subsequently, he revisited Dr. Wendt, who placed him back in restricted work.

On July 26 and August 12, 1994, plaintiff had carpal tunnel release surgery on his right and left arms, respectively. The following month, plaintiff was off work and received physical therapy. In the fall of 1994, plaintiff was reassigned to salvage work. In November 1994, plaintiff suffered a knee injury while working in a salvage position and was reassigned to the order filler position.

From November 1994 to March 1995, Ken Chapman, assistant manager of the repack department, occasionally verbally warned plaintiff regarding his production failures. Specifically, on January 24, 1995, Chapman reprimanded plaintiff regarding his low production during the week of January 16–18, 1995.

In a letter to defendant dated January 25, 1995, Dr. Wendt provided permanent work restrictions for plaintiff, limiting "the repetitive flexion-extension motions at both wrists and both elbows" and implementing a forty-pound lifting restriction.

On February 2, 1995, Dr. Wendt specified that the repetitive flexion-extension motions should be performed for only 1 to 1–1/2 hours at a time with a subsequent 10- to 15–minute break or some other type of activity not requiring repetitive motions of the wrists or the elbows. On February 6, 1995, defendant issued a written warning to plaintiff for failing to meet production requirements in the order filler position.

On February 14, 1995, plaintiff filed a workers' compensation claim, alleging that he had suffered an injury to his upper extremities on or about January 9, 1995 through February 13, 1995. Plaintiff again visited Dr. Wendt on February 15, 1995. After plaintiff complained to Dr. Wendt regarding the production requirements, defendant offered to allow plaintiff to take longer breaks during the day, and to work additional time without pay to make up for the extra break time. Plaintiff refused the accommodation. On February 28, 1995, defendant issued another written warning regarding plaintiff's failure to meet production requirements in the previous three weeks.

On March 17, 1995, Dr. Wendt sent a letter to defendant restating the permanent restrictions. Dr. Wendt also stated:

I am not sure he actually needs a full break, however, or should be required to stay longer to get his breaks in. To counteract the fact that he would not be getting breaks, his production requirements should be decreased, which will probably help him more than anything. I would recommend that his production requirements be decreased to 50%, for at least a six-week trial. Also, since he has done better in the high volume area, I would recommend that he be restricted to that area.

Subsequently, defendant relieved plaintiff of the production requirements.

On April 3, 1995, plaintiff filed a charge with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) alleging violations of the ADA and the Kansas Act Against Discrimination. In the charge, plaintiff alleged that defendant failed to reasonably accommodate him by transferring him to a repack department salvage position or a receiving department checker position. The charge indicates that plaintiff specifically requested reassignment to a third-shift receiving department checker position. The checking job involved checking in merchandise, scanning labels on the merchandise, and occasionally driving a fork truck. Plaintiff stated in his affidavit that such a job fit within his restrictions. Later in April, plaintiff bid for a transfer to the third-shift checker position in the receiving department, and defendant subsequently transferred plaintiff to that position on May 1, 1995. From May 1, 1995 to August 26, 1996, plaintiff worked as a checker and on a fork lift with no significant problems and no complaints.

In August 1996, defendant eliminated the third shift at several distribution centers, including the Lawrence, Kansas facility. Plaintiff unsuccessfully bid for a checker job and a fork lift job on second shift. As required by the associate handbook, associates with the highest seniority received the positions. All those not receiving a job through the bidding process were assigned to the second-shift shipping department, which had not filled.

On August 26, 1996, plaintiff began work on the second shift as a freight handler—a position that violated his restrictions. Plaintiff indicated that he could not perform the position, but Bob Larrabee, the second-shift operations manager, was unable to confirm the work restrictions with Engnehl. Despite his protestations, plaintiff was required to pull nonconveyable freight for three hours. After plaintiff complained to Larry Poff, the shipping department assistant manager, that he was unable to perform the job, defendant moved plaintiff to a fork lift position. Plaintiff, however, was unable to perform that job after two hours because the fork lift did not have power steering. Larrabee then told plaintiff that he was aware of the repetitive motion restriction and that he

would assume that plaintiff had a weight restriction until plaintiff could get him a copy of the actual restrictions.

The next day, defendant received several copies of plaintiff's restrictions. Plaintiff subsequently explained to Larrabee the details of his injuries, and Larrabee indicated that he could find work for plaintiff within his restrictions if plaintiff would help him by telling him if a position irritated his injuries. Plaintiff then indicated to Larrabee that he could perform the order filler position in repack for a limited time in the high-volume area, which has no production requirements. Larrabee stated that he would find plaintiff a permanent position within his restrictions as soon as possible. Throughout the next five work days, plaintiff did various jobs, some of which violated his restrictions. On September 4, 1996, after plaintiff requested to see Dr. Wendt and refused to work because his arms and hands were in poor condition, Engnehl advised plaintiff to request specific restrictions indicating the jobs that he could do. At this point, plaintiff decided to quit his job.

On September 6, 1996, Dr. Wendt wrote plaintiff new restrictions which limited him to the checker and fork lift jobs—two jobs that plaintiff believed were within his restrictions. Plaintiff received a copy of the new restrictions. Plaintiff then left Dr. Wendt's office, went to Engnehl's office, and told her that he was quitting. Engnehl immediately told plaintiff that she had intended to find him a checker or fork lift job. On September 16, 1997, plaintiff filed the instant action.

Plaintiff stated in his affidavit that defendant's conduct caused him to suffer extreme mental distress, including hopelessness and depression. Plaintiff also withdrew from relationships and activities. Plaintiff, however, has never sought treatment for these conditions.

Plaintiff stated in his affidavit that all of his work experience involved manual and physical labor, requiring repetitive work and heavy lifting. In his deposition, however, plaintiff testified that prior to his employment with defendant, he worked as a dispatcher for Transport Labor, Incorporated, and as an operations manager at Overland Plaza truck stop. His work at the truck stop included employee oversight, preparing daily reports, advertising, promoting, and selling.

In his affidavit, plaintiff stated that his injuries have foreclosed him from working in at least eighty percent of jobs in construction, warehouse, trucking, medium to heavy lifting, oil industry, and rig work. Plaintiff also stated that his commercial driver's license is useless because he is unable to load heavy freight and merchandise. Plaintiff stated in his affidavit that he attempted to find training in Topeka, Kansas for new jobs, but was unable because of his restrictions to do most jobs, including radiology, nursing, electrical, HVAC, plumbing, mechanical work, typing, and other types of office work. Plaintiff stated in his affidavit that he can run a nail gun, a pneumatic staple gun, a power washer, and a paint sprayer, but only for short periods of time and cannot use any sort of repetitive motion.

Approximately ten days after leaving defendant's employment, plaintiff began part-time work painting tanks for Ferrell Gas Company. Plaintiff initially applied for a permanent job with Ferrell Gas on their docks, but no positions were available within his work restrictions. Since then, plaintiff has not applied for full-time employment. Plaintiff oversaw the construction of his daughter's home, including taking bids from contractors and designing various aspects of the home. Plaintiff also assisted in the construction of a modular home, using a staple gun and a nail gun. Plaintiff has recently taken a job pulling fifth-wheel campers behind his pickup truck to various destinations.

### III. Analysis

Plaintiff asserts constructive discharge claims under the ADA for discrimination and retaliation, under ERISA for intentional interference with rights, and under

state common law for workers' compensation retaliation. Plaintiff also asserts a claim of fraudulent and abusive practices under the Kansas Workers Compensation Act, K.S.A. 44–5,121, and a state common law claim of intentional infliction of emotional distress. Defendant requests summary judgment on each of the claims.

### A. Disability–Based Claims

Plaintiff asserts constructive discharge claims of disability discrimination and retaliation. Defendant argues that plaintiff has failed to establish either that he was disabled or that he was discharged.

#### 1. Disabled

■ The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the Pretrial Order, plaintiff alleges that he is disabled because his carpal tunnel syndrome and tendonitis substantially limits his ability to breathe, lift, and work. In his response to the summary judgment motion, plaintiff failed to offer evidence or discuss the limitation on his ability to breathe. Thus, the court will limit its discussion to lifting and working.[1]

■ Lifting is a major life activity. *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir.1996). An impairment "substantially limits" a major life activity if the individual is unable to perform the major life activity, or is significantly restricted in the ability to perform the major life activity compared to the general population. *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir.1999) (citing 29 C.F.R. § 1630.2(j)(1)). Whether plaintiff is substantially limited depends on the nature and severity of his impairment, its

expected duration, and its expected permanent or long-term impact. *Id.* (citing 29 C.F.R. § 1630.2(j)(2)).

■ Plaintiff offers evidence of his permanent forty-pound lifting restriction to show that his impairment substantially limits his ability to lift. Proof of the lifting restriction alone is insufficient to show substantial limitation. *See Gibbs v. St. Anthony Hosp.,* No. 96–6063, 1997 WL 57156, at *2 (10th Cir. Feb.12, 1997) (25–pound lifting restriction). Plaintiff fails to offer any evidence comparing his lifting ability to that of the general population. Even with such evidence, courts have found more severe restrictions insufficient as a matter of law. *See Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, (4th Cir.1996) (25–pound restriction), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996) (same).

■ Plaintiff also argues that he is substantially limited in the major life activity of working. Working is a major life activity. *See* 29 C.F.R. § 1630.2(i). In addition to the factors set forth above, to determine if plaintiff is substantially limited in working, the court must consider whether plaintiff is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). Specifically, the court considers:

(A) [t]he geographical area to which the individual has reasonable access;

(B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual

---

[1]. The court will not consider plaintiff's arguments in his response brief that he was substantially limited in the major life activities of caring for himself and performing manual tasks because such a claim was not included

in the Pretrial Order. *See Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090–91 (10th Cir.1991) (holding that the general liberalized pleading rules do not allow last-minute changes in the plaintiff's theories).

is also disqualified because of the impairment (class of jobs); and/or

(C) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir.1994) (quoting 29 C.F.R. § 1630.2(j)(3)(ii)).

Plaintiff stated in his affidavit that he is unable to perform at least eighty percent of jobs in construction, warehouse, trucking, medium to heavy lifting, oil industry, and rig work. Plaintiff also stated that he is unable to perform jobs such as nursing, radiology, electrical, HVAC, plumbing, mechanical work, typing, and other office work. Plaintiff offers only these conclusory statements regarding a variety of jobs that he cannot perform with no evidence of the occupational requirements. Plaintiff has failed to submit competent evidence that he is unable to perform a class of jobs or a broad range of jobs in various classes. *See id.* at 944 (plaintiff failed to show significant restriction in ability to perform class of jobs or broad range of jobs in various classes where the evidence did not address his training, the geographical area, or the other jobs demanding similar training from which plaintiff was disqualified); *Welsh v. City of Tulsa*, 977 F.2d 1415, 1419 (10th Cir.1992) (plaintiff failed to establish substantial limitation on ability to work where he merely speculated that he would be disqualified from other jobs).

■ Plaintiff's evidence fails to address the jobs available in the geographical area, the jobs requiring similar training, or his comparative vocational training, skills, and abilities. Conversely, defendant offered evidence that plaintiff oversaw the construction and design of his daughter's house, that he assisted in the construction of a modular home, and that he worked as a dispatcher and as an operations manager. Plaintiff established that he is unable to perform the specific duties of the order filler or freight handler job. Plaintiff, however, must prove more than an inability to perform a narrow range of jobs. *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 905 (10th Cir.1997), *cert. granted*, —— U.S. ——, 119 S.Ct. 790, 142 L.Ed.2d 653 (Jan. 8, 1999); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2nd Cir.1994). Plaintiff is not substantially limited in the major life activity of working. Accordingly, plaintiff has failed to establish that he was disabled under the ADA.

### 2. Constructive Discharge

■ Defendant argues that plaintiff has failed to create a genuine issue of material fact that defendant constructively discharged him. The court agrees. "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 534 (10th Cir.1998). The plaintiff's subjective view of the working conditions is irrelevant; the conditions must be objectively intolerable. *Id.*

■ Constructive discharge is not established by evidence that "an employee was dissatisfied with the nature of his assignments ... [or] the employee feels that the quality of his work has been unfairly criticized ... [or] the employee's working conditions were difficult or unpleasant." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir.1993). Plaintiff's evidence establishes that, on one occasion, Engnehl required plaintiff to wait three days to see the company's retained physician, and to use personal leave time if he was unable to work during those three days. Defendant also moved plaintiff back and forth within the repack department between salvage work, which plaintiff considered accept-

able, and order filler work, which plaintiff deemed unacceptable.

On the other hand, defendant offered to allow plaintiff to take longer breaks and work equivalent additional time, but plaintiff refused. Moreover, defendant stopped criticizing plaintiff for failing to meet production requirements after Dr. Wendt restricted his production. Although defendant's treatment of plaintiff from March 1994 through April 1995 may have created a difficult or unpleasant working environment, a reasonable person would not have felt compelled to resign. This holding is further bolstered by the fact that plaintiff did not resign during that time period.

Even if defendant's treatment of plaintiff from March 1994 through April 1995 could be considered intolerable, plaintiff was in the checker position for nearly sixteen months. Plaintiff requested the position and had no complaints during that time. That period with no allegedly adverse working conditions vitiated plaintiff's reliance on the previous thirteen-month period to establish constructive discharge. *See Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 167 (1st Cir.1991) (no constructive discharge where plaintiff did not resign within a reasonable time after allegedly intolerable working conditions); *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755–56 (5th Cir.1986) (no constructive discharge where plaintiff resigned five months after allegedly intolerable working conditions), *modified on other grounds*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *accord Hirschfeld v. New Mexico Corr. Dep't*, 916 F.2d 572, 580 (10th Cir.1990) (affirming district court's rejection of constructive discharge claim where plaintiff did not leave work until four months after allegedly discriminatory acts).

After plaintiff moved to the second shift on August 26, 1996, Bob Larrabee, the second-shift operations manager, initially assigned him to a position that did not comply with his restrictions. Larrabee, who had neither previously supervised plaintiff nor been involved in the allegedly discriminatory incidents of 1994 and 1995, subsequently made efforts to accommodate plaintiff's desire for other positions whenever he complained that he was unable to perform the jobs. Although defendant indicated that it did not have a copy of plaintiff's work restrictions, Larrabee told plaintiff that he would assume that such restrictions existed and try to comply with them. Larrabee also told plaintiff that he would find him a permanent position within his restrictions as soon as possible. After six work days at various jobs, which occasionally irritated his injuries, plaintiff was told to submit new work restrictions that specified the jobs he could perform. Plaintiff quit immediately after obtaining the revised restrictions limiting plaintiff to jobs that defendant requested and that plaintiff acknowledged that he could perform.

The court holds that a reasonable person would not view such working conditions as intolerable. Plaintiff failed to give defendant a chance to comply with the new restrictions—restrictions that defendant had requested for plaintiff and that plaintiff acknowledged were appropriate. *See Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir.1997) (rejecting constructive discharge theory where plaintiff did not give defendant a reasonable chance to work out the problem), *cert. denied*, —— U.S. ——, 118 S.Ct. 1515, 140 L.Ed.2d 669 (1998); *cf. Templeton v. Neodata Serv., Inc.*, 162 F.3d 617, 619 (10th Cir.1998) (ADA requires both parties involvement in interactive process of finding an accommodation). Plaintiff merely quit in anticipation that the conditions would become intolerable. Plaintiff's assumption and subsequent resignation were unreasonable, especially where plaintiff's supervisor had not been involved in any of the prior allegedly discriminatory behavior and he had expressed his desire to help plaintiff find a permanent position within his restrictions. *See Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 539 (5th Cir.1998) (employee has obligation "not to assume the worst, and not to jump to

conclusions too fast"); *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir.1995) (same); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991) (same); *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987) (same). Accordingly, plaintiff's ADA constructive discharge claims are dismissed.

### B. ERISA Interference/Workers' Compensation Retaliation Claims

Plaintiff asserts constructive discharge claims for interference with rights under ERISA and for workers' compensation retaliation. Both of those claims rely on plaintiff's assertion that defendant constructively discharged him by creating intolerable working conditions. As stated previously, plaintiff has failed to create a genuine issue of material fact that defendant constructively discharged him. Accordingly, plaintiff's workers' compensation retaliation claim and ERISA intentional interference with rights claim are also dismissed.

### C. KWCA Fraud/Abuse Claim

■ Plaintiff alleges that defendant's conduct constituted fraudulent and abusive practices with respect to the workers' compensation proceedings, which are prohibited under K.S.A. 44–5,120. Defendant argues that plaintiff's claim must be dismissed because plaintiff failed to exhaust the administrative remedies as required by K.S.A. 44–5,121.

On July 1, 1997, the Kansas legislature amended K.S.A. 44–5,121 to provide that, "[r]elief under this section is to be predicated upon exhaustion of administrative remedies available in K.S.A. 44–5,120 and amendments thereto." K.S.A. 44–5,120 provides an administrative scheme in which persons asserting claims of fraudulent and abusive practices in workers' compensation proceedings must file a complaint with the director of workers' compensation. Complaints filed must be dis-

missed upon the written request of the claimant if the director has failed to conduct a hearing or otherwise dismiss the complaint within 180 days of the filing of the complaint. The statute provides that such a dismissal satisfies the administrative exhaustion requirement of K.S.A. 44–5,121. K.S.A. 44–5,120(e).

■ Plaintiff argues that the amendment to K.S.A. 44–5,121 does not apply to his case. The court disagrees. It is well established that if the change in the law is procedural and it does not prejudice the substantive rights of the parties, "all actions will be subject to the new procedure whether they accrued before or after the change in the law and whether or not a suit had been instituted." *Rios v. Board of Public Utilities of Kansas City, Kansas*, 256 Kan. 184, 883 P.2d 1177, 1182 (1994). Procedural laws are those concerning the mode of proceeding to enforce rights. *Id.* On the other hand, substantive laws establish rights and duties to be enforced. *Id.* The provision at issue is procedural because it simply alters the mode of proceeding to enforce rights by requiring resort to the director of workers' compensation before bringing suit in court. Thus, the exhaustion requirement may be applied to this case if it does not prejudice the parties substantive rights.

Plaintiff argues that the amendment prejudices his substantive rights because there is no guarantee that the administrative remedies would be satisfied prior to the end of the applicable limitations period for filing suit. Plaintiff's cause of action under K.S.A. 44–5,121, however, accrued on September 6, 1996—the date plaintiff allegedly suffered economic loss.[2] *See* K.S.A. 44–5,121 (cause of action available to "any person who has suffered economic loss by a fraudulent or abusive act or practice"). Under K.S.A. 60–512(2), "[a]n action upon a liability created by a state

---

**2.** If required to address the issue, the court would find that plaintiff had suffered no economic loss—and, therefore, have no cause of action under K.S.A. 44–5,121—because, as

discussed previously, plaintiff voluntarily resigned from defendant's employment and has failed to establish constructive discharge.

other than a penalty or forfeiture" must be brought within three years. Because K.S.A. 44–5,121 created plaintiff's cause of action here, the three-year limitations period applies and plaintiff must bring such action by September 6, 1999. The amendment to K.S.A. 44–5,121, requiring administrative exhaustion was enacted in July 1997—more than two years prior to the end of the limitations period for plaintiff's cause of action. Because the administrative remedies give plaintiff the right to demand dismissal of the charge after 180 days, plaintiff could have easily satisfied the administrative exhaustion requirement and filed his suit within the applicable limitations period. Under the well established rule that procedural laws apply to all actions whether accrued before or after the change in the law, the administrative exhaustion requirement applies to plaintiff's claim. Accordingly, plaintiff's KWCA fraud and abuse claim is dismissed without prejudice for failure to exhaust administrative remedies.

### D. Intentional Infliction of Emotional Distress Claim

█ Plaintiff alleges that defendant's conduct constituted intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, plaintiff must show: (1) defendant acted intentionally or with reckless disregard for plaintiff; (2) the conduct was extreme and outrageous; (3) the conduct caused plaintiff to suffer mental distress; and (4) the mental distress was extreme and severe. *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman,* 978 P.2d 922, 930 (Kan.1999). Defendant argues that plaintiff has failed to create a genuine issue of material fact with respect to the second and fourth elements. The court agrees.

█ The extreme and outrageous conduct element requires conduct "so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* No such conduct occurred here. For the same reasons discussed in denying plaintiff's constructive discharge claims, defendant's conduct simply did not rise to the level of extreme and outrageous.

Likewise, plaintiff failed to provide evidence of extreme and severe emotional distress. Plaintiff stated in his affidavit that defendant's conduct caused him to suffer extreme mental distress, including hopelessness and depression, and that he withdrew from relationships and activities. Plaintiff, however, has never sought treatment for these conditions. Moreover, he has failed to point to any physical manifestations of his distress. *See id.* at 930–31. Accordingly, plaintiff's claim of intentional infliction of emotional distress is dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion (Doc. 70) for summary judgment is granted. Plaintiff's fraudulent and abusive practices claim under the Kansas Workers Compensation Act is dismissed without prejudice. Plaintiff's remaining claims are dismissed with prejudice.

Copies of this order shall be mailed to counsel of record for the parties.

The case is closed.

IT IS SO ORDERED.