**Candi PARKER, Plaintiff,**

v.

**CENTRAL KANSAS MEDICAL CENTER, et al.,
Defendants.**

**No. CIV.A. 00–2328–CM.**

United States District Court,
D. Kansas.

Oct. 11, 2001.

Reconsideration Denied Dec. 12, 2001.

Dan E. Turner, Phillip L. Turner, Turner & Turner Law Firm, Topeka, KS, for plaintiff.

Steven C. Day, Christopher S. Cole, Woodard, Hernandez, Roth & Day, Wichita, KS, for Central Kansas Medical Center.

Randy J. Troutt, Hite, Fanning & Honeyman, LLP, Wichita, KS, for William Slater.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff in this case has sued defendant Central Kansas Medical Center (CKMC) pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. Plaintiff also asserts a claim of medical malpractice against both defendants CKMC and William Slater, M.D. The case has proceeded through discovery, and deadlines for disclosure of expert witnesses by all parties have passed. This matter is before the court on defendants CKMC and Dr. Slater's motions to strike the affidavit and expert opinions of Merle Fieser, M.D. (Docs. 73 & 74); plaintiff's motion for extension of time to respond to CKMC's motion to strike affidavit and expert opinions of Merle Fisher, M.D., and to reopen discovery and continue trial (Doc. 80); plaintiff's motion for extension of time to respond to Dr. Slater's motion to strike affidavit and expert opinions of Merle Fisher, M.D., and to reopen discovery and continue trial (Doc. 83); and defendant CKMC's request for oral argument (Doc. 86). The motions at issue will be disposed of pursuant to this order and, therefore, the court denies CKMC's request for oral argument.

## I. Factual Background

On August 24, 1998, plaintiff was admitted to CKMC for treatment of injuries she sustained during a horseback riding incident earlier that evening. Plaintiff was initially treated at the hospital by her family physician, Merle Fieser, M.D. Apparently, Dr. Fieser contacted defendant Slater, a general surgeon, about seeing plaintiff. For reasons immaterial to the motions at issue, Dr. Slater first agreed, then later declined, to see plaintiff. Plaintiff then was transported to Hutchinson Hospital where she underwent two surgeries.

The scheduling order in this case, as modified by the court, established April 20, 2001 as the deadline for plaintiff's expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2). The scheduling order further provided discovery to be completed by June 15, 2001. On April 20, 2001, plaintiff submitted her expert witness disclosures, in which she designated William A. Lybarger, Ph. D. as her only expert.

On May 25, 2001, plaintiff submitted her final witness and exhibit list, in which she

designated Dr. Fieser as a witness. Dr. Fieser, one of plaintiff's treating physicians, previously had been deposed on March 7, 2001, and although not a party to the litigation, Dr. Fieser was represented at the deposition by her attorney, Brian Wright. At that deposition, Dr. Fieser testified that she believed plaintiff had achieved a stable condition and could be transferred from CKMC to another hospital to undergo surgery. Dr. Fieser further testified that the option of transfer was equally as good as having surgery at CKMC and that she had no concerns that there would be a problem in transferring plaintiff.

Defendants filed motions for summary judgment. Attached to plaintiff's responses was an affidavit of Dr. Fieser dated July 24, 2001. The affidavit consisted of twenty-four enumerated paragraphs, including the following:

20. It was my professional opinion that Mrs. Parker needed immediate emergency medical attention. The Emergency Room was only three floors down with an accessible elevator and I would have happily accommodate (sic) whatever Dr. Slater needed to provide care to Mrs. Parker.

22. Mrs. Parker had no other choice than to transfer to Hutchinson Hospital because she was not receiving any care from Central Kansas Medical Center and Dr. Slater left the hospital with out providing any care or examination to Mrs. Parker.

23. Dr. Slater's refusal to see or even examine Mrs. Parker fell below the standard of care for our community.

24. It is also my professional belief that the delay in treatment lead to Mrs. Parker's medical complications immediately following her accident and the complications that she continues to have on an ongoing basis.

After receipt of Dr. Fieser's affidavit, defendant CKMC asserts that its counsel contacted Dr. Fieser's counsel, Mr. Wright. Defendant CKMC contends that Mr. Wright stated that he was not aware that Dr. Fieser had executed an affidavit at plaintiff's request. Through Mr. Wright, Dr. Fieser subsequently provided another affidavit. In her second affidavit, Dr. Fieser stated that she did not prepare the first affidavit and that it was not her intent in signing the first affidavit to contradict or change any of her deposition testimony. Dr. Fieser also stated that, to the extent the first affidavit indicates that plaintiff did not receive medical care at CKMC, the affidavit is incorrect. Dr. Fieser stated that both she and the nursing staff at CKMC provided care and treatment to plaintiff. Significantly, Dr. Fieser also disavowed any opinions regarding whether or not plaintiff's transfer caused or contributed to any of plaintiff's injuries or complications. Dr. Fieser stated that she has not reviewed any records related to the transfer or the records of the care plaintiff received at Hutchinson Hospital and could not, therefore, form an opinion regarding the cause of her current condition or complications which occurred following the transfer.

Plaintiff contends that defendant CKMC's counsel's contact with Mr. Wright may support a claim of witness intimidation and spoilation of evidence by defendant CKMC. Plaintiff claims that counsel for CKMC informed Mr. Wright that defendant CKMC had been involved in previous litigation against Dr. Fieser. For support, plaintiff cites to a letter written by Mr. Wright to plaintiff's counsel. Plaintiff believes that this threat of prior litigation, along with the fact that defendant CKMC could revoke Dr. Fieser's hospital privileges, was used to coerce Dr. Fieser's second affidavit.

## II. Discussion

■ Rule 26(a)(2) requires each party to disclose the identity of its expert witnesses and produce an expert report for each expert witness. In this case, the time for expert disclosures was set by the court. Plaintiff did not disclose Dr. Fieser as an expert witness. Therefore, as plaintiff's treating physician, Dr. Fieser may not provide expert testimony but is, rather, limited to providing testimony in accordance with Federal Rule of Evidence 701. This means Dr. Fieser may provide testimony regarding her observations based solely on her personal knowledge, but may not provide testimony beyond the scope of her treatment of plaintiff. *Davoll v. Webb,* 194 F.3d 1116, 1138–39 (10th Cir.1999). Any conclusions drawn by Dr. Fieser must fall within the province of a lay witness who has personal knowledge of the situation. *United States v. Anthony,* 944 F.2d 780, 782–83 (10th Cir.1991).

■ Paragraphs 22, 23, and 24 of Dr. Fieser's first affidavit espouse opinions which are clearly expert opinions. Dr. Fieser's statements offer opinion testimony beyond that which is incidental to Dr. Fieser's care and treatment of plaintiff and is, therefore, subject to the disclosure requirements of Rule 26(a)(2)(B). Having failed to disclose Dr. Fieser as an expert witness, the court hereby strikes paragraphs 22, 23, and 24 of Dr. Fieser's July 24, 2001 affidavit.

■ Plaintiff requests that, in the event the court strikes Dr. Fieser's affidavit, plaintiff be given an additional sixty days in which to obtain an expert opinion. Under Rule 16(b), a deadline established in a scheduling order, such as the deadline to designate experts and make Rule 26(a)(2) disclosures at issue here, may be extended only "upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge."

To show "good cause," the party seeking to extend the deadline must establish that the scheduling order's deadline could not have been met with diligence. *Denmon v. Runyon,* 151 F.R.D. 404, 407 (D.Kan.1993).

■ In this case, the plaintiff sought no such extension, and none was granted. Moreover, plaintiff offers **no** reason, let alone a showing of good cause, why she was unable to procure an expert within the disclosure deadline to testify as to causation and why she should be allowed an additional sixty days in which to obtain an expert. Plaintiff's request for an additional sixty days to obtain an expert is denied.

■ Plaintiff also requests that discovery be reopened so that she be allowed to depose Mr. Wright, Dr. Fieser, and CKMC's counsel. However, plaintiff has failed to convince this court that reopening discovery for this purpose would result in anything but a fishing expedition of the attorneys of record in this case. Plaintiff's allegation that CKMC's attorney coerced a new affidavit is completely unfounded and unsupported by the record. In fact, the letter to which plaintiff cites in support of this allegation mentions nothing about a conversation between CKMC's attorney and Mr. Wright regarding prior litigation against Dr. Fieser. Plaintiff has simply failed to make any showing to support a claim of witness intimidation and spoilation of evidence. To delay the proceedings of this case in order to reopen discovery for this purpose is not warranted and would, therefore, be inappropriate.

**IT IS THEREFORE ORDERED** that defendants CKMC and Dr. Slater's motions to strike the affidavit and expert opinions of Merle Fieser, M.D. (Docs. 73 & 74) are granted to the extent that paragraphs 22, 23, and 24 of Dr. Fieser's July 24, 2001 affidavit are hereby stricken.

**IT IS FURTHER ORDERED** that plaintiff's motions for extension of time to respond to CKMC's and Dr. Slater's motions to strike affidavit and expert opinions of Merle Fisher, M.D., and to reopen discovery and continue trial [1] (Doc. 80 & 83) are denied.

**IT IS FURTHER ORDERED** that defendant CKMC's request for oral argument (Doc. 86) is denied.

### MEMORANDUM AND ORDER

Plaintiff in this case has sued defendant Central Kansas Medical Center (CKMC) pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. Plaintiff also asserts a claim of medical malpractice against both defendants CKMC and William Slater, M.D. This matter is before the court on Dr. Slater's motion for summary judgment (Doc. 62), CKMC's motion for summary judgment (Doc. 69), and plaintiff's motion for reconsideration (Doc. 93).

### I. Facts [1]

On August 24, 1998, plaintiff was involved in an accident while riding a horse near her home. Immediately after the accident, plaintiff noticed that her jeans were torn and that she was bleeding from her groin area. Plaintiff called her family physician, Dr. Merle Fieser, who advised plaintiff to come to her office for treatment.

By the time plaintiff arrived at Dr. Fieser's office, the towel with which she had covered her wound during the trip was soaked with blood. Dr. Fieser closed plaintiff's wound and ordered x-rays. The x-rays demonstrated that plaintiff had air under her diaphragm, which indicated to Dr. Fieser that plaintiff likely had perforated her colon. Recognizing that plaintiff probably would require surgery, Dr. Fieser telephoned Dr. Slater, a general surgeon. Dr. Slater advised Dr. Fieser that he would see plaintiff.

After speaking with Dr. Slater, Dr. Fieser telephoned CKMC to inform the house supervisor that plaintiff would be presenting to the hospital with an emergency condition. Plaintiff was then transported to CKMC, where she was met by hospital personnel at the emergency room entrance. Plaintiff was taken directly to a room on the third floor of the hospital. There is a dispute as to what transpired next between Dr. Fieser and Dr. Slater. Dr. Slater testified that he believed it would be necessary to see plaintiff in the emergency room in order to perform a proper examination, so he requested the hospital staff to bring plaintiff to the emergency room. Dr. Slater further testified that, several minutes later, he was informed by the hospital staff that Dr. Fieser expected him to examine plaintiff in her room on the third floor. According to Dr. Slater's testimony, he then called Dr. Fieser, requesting that plaintiff be brought to the emergency room, but Dr. Fieser refused to comply with Dr. Slater's request. In contrast, Dr. Fieser testified that she (Dr. Fieser) was never made aware, either by CKMC staff or Dr. Slater, that Dr. Slater had requested plaintiff be returned to the emergency room. Accordingly, Dr. Fieser denies ever telling Dr. Slater or the hospital staff that Dr. Slater would have to examine plaintiff in her third floor room. In any event, Dr. Slater decided not to treat plaintiff, and plaintiff was advised of the same.

---

1. For reasons unrelated to these motions, the court continued the trial in this matter to April 2, 2002.

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

Soon thereafter, plaintiff's mother telephoned Dr. Slater to request that he reconsider his decision. According to plaintiff's mother, Dr. Slater indicated to her that he would consent to treat plaintiff on the condition that "all of her records" be turned over to him. After plaintiff was informed of the conversation her mother had with Dr. Slater, Dr. Fieser indicated to plaintiff that her options were either to go to another hospital or allow responsibility for her care and treatment to be turned over to Dr. Slater. Plaintiff opted to proceed with a transfer to Hutchinson Hospital. At the time plaintiff's transfer to Hutchinson Hospital was initiated, plaintiff had been at CKMC for approximately one hour.

At Hutchinson Hospital, plaintiff was diagnosed with a traumatic injury to the lower abdominal wall, with disruption of her small intestine and colon wall. The following morning she underwent surgery, which consisted of an exploratory laparotomy, bowel restriction, colon repair, and appendectomy. The next day plaintiff underwent a second surgery, which was described in her medical records as a second look operation with cholecystectomy, insertion of gastrotomy and complex abdominal wall closure. While still in the hospital, plaintiff developed an infection, which required a third surgery to debride her surgical wound. Several days later, plaintiff was transferred to Via Christi Regional Medical Center in Wichita for treatment of her surgical wound infection. Several months later, plaintiff underwent abdominal wall reconstruction surgery. Plaintiff claims that, because a portion of her bowel was removed, she is required to take regular laxatives and stool softeners. Plaintiff also contends that she has frequent uri-nary tract and kidney infections and that she is depressed over her residual scarring and physical limitations.

## II. Motion for Reconsideration

On October 11, 2001, the court considered CKMC and Dr. Slater's motions to strike the affidavit and expert opinions of Merle Fieser, M.D. In that order, the court ruled that certain paragraphs of Dr. Fieser's first affidavit espoused opinions which were expert opinions and, accordingly, were subject to the disclosure requirements of Rule 26(a)(2)(B). Having failed to timely disclose Dr. Fieser as an expert witness, the court struck those paragraphs of Dr. Fieser's affidavit.

■ Plaintiff now moves the court to reconsider[2] its ruling. The court finds that plaintiff's motion is not timely filed and should therefore be denied. Plaintiff should have filed her motion to reconsider within ten days after the court entered its order. Fed.R.Civ.P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."); D. Kan. Rule 7.3(b) ("Motions seeking reconsideration of non-dispositive orders shall be filed within ten days after the filing of the order unless the time is extended by the court."). Excluding intermediate Saturdays, Sundays, and legal holidays pursuant to Fed.R.Civ.P. 6(a), plaintiff had until October 25, 2001 to file her motion for reconsideration. Because plaintiff did not file her motion until October 29, 2001, the motion is out of time and should be denied.

■ Alternatively, even if plaintiff had timely filed the motion, the court would deny it on the merits. A motion to recon-

---

**2.** The court notes that the Federal Rules of Civil Procedure recognize no "motion for reconsideration." Instead, courts construe such a filing as either a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e) or a motion seeking relief from final judgment under Fed. R. Civ. p. 60(b). *United States v. Emmons,* 107 F.3d 762, 764 (10th Cir.1997).

sider must be based on 1) an intervening change in controlling law, 2) the availability of new evidence, or 3) the need to correct clear error or prevent manifest injustice. D. Kan. Rule 7.3(b). Plaintiff fails to assert any of these bases in her motion. Rather, plaintiff contends that the court's order struck portions of Dr. Fieser's first affidavit "based upon a second affidavit obtained by the Defendants," and that this was error because the second affidavit puts material facts in dispute. However, the court did not strike portions of Dr. Fieser's first affidavit "based upon" Dr. Fieser's second affidavit. In fact, the court did not even consider Dr. Fieser's second affidavit in its decision to strike portions of Dr. Fieser's first affidavit. Instead, the court found that portions of Dr. Fieser's first affidavit were expert opinions and that those expert opinions should be struck because plaintiff failed to timely designate Dr. Fieser as an expert witness. Moreover, the motion under consideration was not a motion for summary judgment and, as such, whether a factual dispute exists is irrelevant to the court's determination of whether to strike portions of Dr. Fieser's first affidavit.

Plaintiff also contends that the court applied the inappropriate standard in regard to Dr. Fieser as a witness, claiming that Dr. Fieser is a material fact witness rather than not an expert. However, the court already considered this issue and determined that certain portions of Dr. Fieser's testimony in fact constituted expert testimony. Plaintiff's argument in this regard is merely a rehash of the issue previously presented to and considered by the court. Revisiting issues already addressed and advancing new arguments which were otherwise available for presentation are inappropriate and, accordingly, plaintiff's motion is denied.

## III. Defendant Slater's Motion for Summary Judgment

### A. Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning

shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## B. Discussion

### 1. Medical Malpractice Claim

Dr. Slater argues that plaintiff cannot maintain a claim for medical malpractice because plaintiff has failed to produce expert medical testimony. Under Kansas law, in order to show medical negligence, a plaintiff must ordinarily produce expert medical testimony. *Sharples v. Roberts,* 249 Kan. 286, 295, 816 P.2d 390, 397–98 (1991). Expert testimony is required to establish the accepted standard of care and to prove causation, except where the lack of care or the existence of proximate cause is apparent to the average layperson from common knowledge or experience. *Bacon v. Mercy Hosp.,* 243 Kan. 303, 307, 756 P.2d 416, 420 (1988).

Plaintiff contends that Dr. Slater's refusal to examine, diagnose, or treat plaintiff fell below the standard of care and that plaintiff suffered injuries as a result. The court finds that such issues, particularly the issue of proximate cause, cannot be decided by the average layperson from common knowledge or experience. Determining whether Dr. Slater's conduct-his initial decision not to treat plaintiff or his subsequent offer to treat plaintiff on the condition that he be given control over her care—was negligent requires a consideration of accepted medical practices in the handling of trauma and surgical patients, which is beyond the common knowledge and experience of laypersons. Even more so, the issue of proximate cause is certainly not apparent to the average layperson. Clearly, without expert testimony, a jury of laypersons would not be competent to decide whether any of plaintiff's post-accident complications were caused by Dr. Slater's conduct or whether such complications were merely the result of her injuries sustained as a consequence of the horse riding accident. Therefore, plaintiff must produce expert testimony to support her medical malpractice claim. *Roesch v. Clarke,* 861 F.Supp. 986, 993 (D.Kan.1994).

Moreover, plaintiff must produce expert testimony at the summary judgment stage. To avoid summary judgment, plaintiff must therefore present expert testimony that Dr. Slater failed to perform his duty of care and that the injuries of which plaintiff complains were the proximate result of such failure. *Howard v. TMW Enters., Inc.,* 32 F.Supp.2d 1244, 1252 (D.Kan.1998); *Sharples,* 249 Kan. at 295, 816 P.2d at 397.

The only expert witness designated by plaintiff is William Lybarger, who holds a Ph.D. in behavioral science. Plaintiff does not contend that Mr. Lybarger will testify as to the issue of medical negligence. Indeed, Mr. Lybarger is not a medical doctor, and he has made clear that he will offer no opinions regarding whether Dr. Slater met the applicable standard of care or whether plaintiff suffered any injury as

a result of her transfer to Hutchinson Hospital.

The court has considered (and reconsidered) whether Dr. Fieser's opinions constituted expert testimony and, if so, whether those expert opinions were properly submitted. Having determined that plaintiff failed to timely designate Dr. Fieser as an expert witness, Dr. Fieser's affidavit is not properly considered on summary judgment. *Howard,* 32 F.Supp.2d at 1253–54. In Howard, the plaintiff asserted a claim for medical negligence and relied only upon an affidavit submitted by a medical doctor as expert testimony on the issue of proximate cause. The court determined that the doctor's affidavit was not timely filed under the parties' scheduling order, that the affidavit therefore should not be considered, and that the defendant accordingly was entitled to summary judgment because plaintiff failed to present expert testimony. *Id.* at 1254. In this case, the court finds that plaintiff has failed to timely produce expert testimony that Dr. Slater was negligent and that Dr. Slater's alleged negligence more likely than not caused injury to plaintiff. Dr. Slater is therefore entitled to summary judgment on plaintiff's medical malpractice claim.

## 2. Intentional Infliction of Emotional Distress Claim

Plaintiff asserts that Dr. Slater attempted to require plaintiff to dismiss her treating physician and become his patient before he would provide emergency medical treatment. Specifically, plaintiff complains about Dr. Slater's conversation with plaintiff's mother, wherein he indicated that he would consent to treat plaintiff on the condition that "all of her records" be turned over to him. Plaintiff contends that this conduct renders Dr. Slater liable for intentional infliction of emotional distress.

To establish a cause of action for intentional infliction of mental distress, proof of four elements is required: (1) the conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe. *Burgess v. Perdue,* 239 Kan. 473, 475, 721 P.2d 239, 242 (1986).

Liability for extreme emotional distress has two threshold requirements which the court must first determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff was of such an extreme degree that the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it. *Id.* If the court determines that reasonable fact finders might differ as to whether a defendant's conduct was sufficiently extreme and outrageous as to subject him to liability for emotional distress and as to whether plaintiff's emotional distress was genuine and so severe and extreme as to result in liability, then, and only then, should the issue of liability be left to the jury. *Taiwo v. Vu,* 249 Kan. 585, 590, 822 P.2d 1024, 1027–28 (1991).

In the present case, even viewing the facts in the light most favorable to plaintiff, Dr. Slater's conduct was not so extreme or outrageous as to permit recovery under the tort of intentional infliction of emotional distress. Considering that plaintiff required surgery, Dr. Slater's asking plaintiff to turn over her records so that he could control plaintiff's treatment was simply not outrageous enough to incur

liability, particularly considering that plaintiff required surgery.

■ Because the first threshold requirement to plaintiff's claim for intentional infliction of emotional distress has not been satisfied, the court need not consider the second threshold requirement; that is, whether the plaintiff's distress was sufficiently severe, genuine, and extreme that no reasonable person should be expected to endure it. Nevertheless, the court has reviewed the evidence on this point and concludes that plaintiff failed to provide evidence of extreme and severe emotional distress resulting from Dr. Slater's conditional offer to treat her. Plaintiff contends that she was extremely upset by Dr. Slater's request and that the nursing staff at CKMC attempted to calm her down. However, without more, claiming to have gotten "extremely upset" is not sufficient grounds for a reasonable jury to find that plaintiff's mental distress was so severe and extreme as to result in liability for intentional infliction of emotional distress. *Wood v. City of Topeka,* 90 F.Supp.2d 1173, 1195 (D.Kan.2000) (plaintiff's claim of depression held insufficient to show extreme mental distress where there was no evidence that plaintiff was hospitalized, saw a doctor, or took medication or had any problems sleeping, eating, or with weight fluctuations); *Nowlin v. K Mart Corp.,* 50 F.Supp.2d 1064, 1074 (D.Kan. 1999) (plaintiff's claims of hopelessness, depression, and withdrawal from relationships and activities held insufficient to show extreme mental distress where plaintiff never sought treatment for his conditions and failed to point to any physical manifestations of his distress). Accordingly, Dr. Slater is entitled to summary judgment of plaintiff's claim on intentional infliction of emotional distress.

## IV. CKMC's Motion for Summary Judgment

On August 24, 2001, the court entered an order granting plaintiff an extension of time in which to respond to CKMC's motion for summary judgment. Specifically, the court granted plaintiff an extension until ten days after the court ruled on CKMC's motion to strike the affidavit of Dr. Fieser. On October 11, 2001, the court ruled on CKMC's motion to strike the affidavit of Dr. Fieser, which the court reconsidered in the present order. The court hereby orders plaintiff to file her response to CKMC's motion for summary judgment within ten days of the date of the present order. Should plaintiff fail to timely file her response, CKMC's motion for summary judgment (Doc. 69) will be considered, decided as an uncontested motion, and granted without further notice pursuant to D. Kan. Rule 7.4.

**IT IS THEREFORE ORDERED** that plaintiff's motion for reconsideration (Doc. 93) is denied.

**IT IS FURTHER ORDERED** that Dr. Slater's motion for summary judgment (Doc. 62) is granted. Dr. Slater is hereby dismissed from this case.

**IT IS FURTHER ORDERED** that plaintiff must file her response to CKMC's motion for summary judgment (Doc. 69) within ten days of the date of this order.